In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 25-2003 & 25-2070

THE BOLDT COMPANY, a Wisconsin Corporation,

*Plaintiff/Counter-Defendant/Appellee/Cross-Appellant*,

*v.*

BLACK & VEATCH CONSTRUCTION, INC., a Missouri Corporation,

*Defendant/Counter-Plaintiff/Appellant/Cross-Appellee*.

---

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cv-08383 — **Andrea R. Wood**, *Judge*.

---

ARGUED MAY 18, 2026 — DECIDED JULY 8, 2026

---

Before SCUDDER, KIRSCH, and TAIBLESON, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Black & Veatch Construction, Inc. hired The Boldt Company to serve as subcontractor for the assembly of a windfarm. Things didn't go according to plan. After construction fell behind schedule and with deadlines looming, Black & Veatch kicked Boldt off the project. Boldt sued Black & Veatch in federal court under diversity jurisdiction, and both parties alleged that the other breached the sub-

contract. Ruling on cross-motions for summary judgment, the district court granted Black & Veatch's motion and denied Boldt's, concluding that Boldt defaulted on the agreement by failing to perform on schedule. The case then proceeded to trial to decide damages. After two weeks of testimony, the jury awarded Black & Veatch only nominal damages.

Black & Veatch appeals the jury verdict along with various evidentiary rulings from the trial. Boldt also appeals, arguing that the district court erred when it granted summary judgment to Black & Veatch. For the reasons below, we affirm the jury verdict, affirm in part and reverse in part the grant of summary judgment, and remand for further proceedings in the district court.

## I

## A

Black & Veatch Construction, Inc. agreed to be the general contractor for the construction of a 60-turbine windfarm in Good Hope, Illinois. The property owner separately entered a contract with General Electric Renewables North America, LLC (GE), which was to supply and deliver wind turbine parts.

To build the turbines, Black & Veatch subcontracted with The Boldt Company, a construction firm that works in the power and utilities sector. The parties' written subcontract included a schedule that Boldt developed, setting out a planned sequence of construction activities and milestones (for instance, the date when the first ten turbines were to be completed). The subcontract said that performance of the work according to the construction schedule was "a material provision."

The project quickly fell behind schedule. The first turbine was due to be constructed by mid-August 2019, but Boldt was unable to begin construction because plans and cranes weren't ready. Progress was also slowed because the ground was wet and crane platforms provided by Black & Veatch weren't suitable for the job. To top it all off, GE failed to deliver on time.

The subcontract said that if Black & Veatch or GE caused a delay, Boldt could give Black & Veatch notice, and that Boldt would then not be responsible for any related breach of the agreement. As the project bogged down, Boldt notified Black & Veatch of delays through a series of brief written memos. On August 22, for instance, Boldt wrote that site conditions weren't suitable at one of the turbine construction points. Two days later, Boldt notified Black & Veatch of wait times for turbine parts. These short notices said that "the full cost and schedule impacts" of the delays were not yet known. Beyond near-daily memos to Black & Veatch outlining problems, Boldt also sent more formal letters concerning unsuitable soil conditions and a work stoppage and ongoing problems with crane platforms and soil conditions. Black & Veatch was aware of the problems with parts deliveries and sent Boldt a notice that GE was causing delays.

After more than a month went by and with no turbines constructed, Black & Veatch took a harder line. It issued three notices of default, informing Boldt that it was behind schedule in breach of the subcontract. Boldt denied responsibility, asserting that the delays were caused by slow deliveries, soil conditions, and problems with the construction works (the subcontract defined that term as "everything used in the performance of work that is not intended to become a permanent

part of the Project"). Boldt's response included a detailed letter about those delays, including a table comparing the expected and actual delivery of parts. Black & Veatch began taking assignments from Boldt (the parties refer to the takeover of work as descoping). Boldt tried a final time to salvage the relationship by proposing acceleration options, but Black & Veatch rejected those proposals and stopped Boldt's work entirely, invoking the subcontract's for-cause termination provision. Boldt's part in the windfarm construction was over just two months after it had begun. Black & Veatch took over the remaining work and completed the project.

B

A few months after Black & Veatch terminated the subcontract, Boldt filed this lawsuit, claiming that Black & Veatch wrongfully ended the parties' contractual relationship, failed to maintain adequate construction facilities, and didn't pay for completed work. Black & Veatch counterclaimed, alleging that Boldt breached the subcontract by failing to perform on time. The parties filed cross-motions for summary judgment (they sought judgment on the other party's claims), and the district court granted Black & Veatch's motion and denied Boldt's. The court concluded that (1) the subcontract barred Boldt's claims insofar as they were based on the availability and adequacy of Black & Veatch's construction works; (2) Boldt failed to provide adequate notice of delays and was responsible for falling behind schedule; and (3) Black & Veatch properly terminated Boldt for cause.

The case proceeded to trial, with the jury only tasked to decide Black & Veatch's damages. Ruling on a motion in limine, the district court stressed that Black & Veatch could base its recovery on all of the work assigned to Boldt—even

those portions that had been descoped prior to the termination for cause. But after Black & Veatch referenced descoping in its opening, the judge had second thoughts. The district court allowed Boldt to put on evidence that some of the work had been descoped prior to the termination of the agreement, such that it was not responsible for related damages. Boldt presented that evidence, but the court ultimately decided the issue as a matter of law and instructed the jury not to distinguish between descoped work and work terminated for cause.

The trial was in part a battle of the experts. Black & Veatch argued that it incurred nearly $39 million in damages to complete Boldt's work (the original subcontract price was $15.4 million). To prove those damages, Black & Veatch relied on the testimony of a project manager who assigned cost codes for expenses related to the windfarm and a damages expert who reviewed the coding process. Boldt's expert raised questions about the reasonableness of Black & Veatch's claimed costs and the jury also heard testimony about errors in Black & Veatch's analysis.

At the close of the evidence, the district court instructed the jury that if Black & Veatch "fails to provide a proper basis for computing its damages, only nominal damages (i.e., $1.00) can be recovered." The jury took that route, and Black & Veatch walked away with $1 in nominal damages. Black & Veatch moved for a new trial or to alter or amend the judgment under Federal Rule of Civil Procedure 59. Boldt also moved to amend the judgment, seeking to recover payment for work completed prior to the termination. The district court denied the post-trial motions, and the parties filed this appeal.

## II

### A

We begin with Black & Veatch's appeal. Black & Veatch argues that it is entitled to a new trial because the district court (1) admitted evidence relevant to liability; (2) admitted undisclosed expert opinions; (3) instructed the jury on nominal damages; (4) committed errors that cumulatively made the trial unfair; and because (5) the jury's verdict is against the manifest weight of the evidence. Black & Veatch also appeals from the denial of Boldt's motion to amend the judgment, contending that the district court issued an improper advisory opinion. We review the denial of a Rule 59 motion for an abuse of discretion, considering embedded legal questions de novo and viewing the evidence in the light most favorable to the prevailing party. *Meadows v. NCR Corp.*, 83 F.4th 649, 652 (7th Cir. 2023); *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). A new trial is warranted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Est. of Burford v. Acct. Prac. Sales, Inc.*, 851 F.3d 641, 646 (7th Cir. 2017) (citation modified).

### 1

Black & Veatch argues that the trial violated its due process rights and was fundamentally unfair because Black & Veatch came prepared to try damages only, but the district court allowed Boldt to admit evidence showing that it wasn't liable for breach and stopped Black & Veatch from introducing opposing evidence. We review evidentiary rulings for an abuse of discretion and will affirm unless the error likely affected

the outcome of the trial. *Jackson v. Esser*, 105 F.4th 948, 963 (7th Cir. 2024).

The district court admitted evidence about Boldt's performance on prior windfarm projects, testimony that Black & Veatch was responsible for schedule delays after Black & Veatch took over the project, testimony that Boldt was surprised that it was terminated from the subcontract, evidence tending to show Boldt's belief that Black & Veatch had defaulted on the subcontract, and Boldt's plan to accelerate construction. The district court also allowed Boldt to present evidence that certain work had been descoped prior to the termination. The court excluded evidence that Black & Veatch attempted to introduce, including the reasons for Boldt's termination and Boldt's failures to perform safely and on time.

It's true that some of the evidence the district court admitted was relevant to the issue of which party breached the subcontract. But this evidence was also relevant to credibility or damages. For instance, the district court admitted evidence of Boldt's reputation in the industry because it suggested that Boldt's witnesses were credible. That Black & Veatch was behind schedule after it took over construction spoke to the reasonableness of its claimed damages. And the district court did not allow Boldt to use the notice and descoping evidence to prove that it wasn't liable. Instead, this evidence tended to show that Boldt became liable at a later date and so was responsible for damages associated with a lesser portion of the project.

The evidence that Black & Veatch wished to introduce in opposition, on the other hand, had only minimal relevance to damages. Generally, the district court admitted evidence about post-termination conduct by Black & Veatch (relevant

to mitigation and damages), and excluded evidence about pre-termination conduct, which was largely irrelevant to the damages question. We agree with that approach. That Black & Veatch had already succeeded on the issue of liability, in other words, meant that Black & Veatch's conduct after it took over the work remained relevant, while Boldt's conduct leading up to the termination was not.

Black & Veatch doesn't contest that it had an opportunity to object to the district court's evidentiary rulings. But Black & Veatch contends that its due process rights were nonetheless violated because it did not have adequate notice that evidence relevant to liability would be admitted. As we've discussed, the evidence at issue was relevant to damages, and so its admission should not have been a surprise. And insofar as Black & Veatch complains that the district court changed its mind mid-trial and allowed testimony about descoping, Black & Veatch's reliance on prior interlocutory orders was misplaced. See *Rao v. J.P. Morgan Chase Bank, N.A.*, 153 F.4th 541, 550 (7th Cir. 2025) (noting that the discretionary law of the case doctrine applies with less force to prior interlocutory orders and "does not preclude a district court from reopening a decided issue") (citation modified).

The district court instructed the jury that Boldt had breached the subcontract and been properly terminated for cause, and that the only question the jury was to decide was damages. The court also ultimately told the jury to ignore the distinction between descoped work and work terminated for cause. We presume that the jury followed these instructions. See *United States v. Warner*, 498 F.3d 666, 683 (7th Cir. 2007). The instructions, together with the fact that this evidence was relevant to damages, distinguish this case from the decision

which Black & Veatch cites. See *Guzman v. City of Chicago*, 689 F.3d 740, 747–48 (7th Cir. 2012) (remanding for new trial on damages where defense counsel "put liability in issue" and that the defense's evidence "coupled with the liability instruction, likely confused the jury by converting this damages-only trial into one about liability"). Black & Veatch contends that the jury must have impermissibly decided liability and reached a compromise verdict (meaning that jurors resolved an inability to decide issues of liability by awarding a party inadequate damages). See *Carter v. Chi. Police Officers*, 165 F.3d 1071, 1082 (7th Cir. 1998). But the jury didn't have to compromise in this case. Instead, the record suggests the jury followed the court's instructions, concluded that it had no reasonable basis to compute damages, and properly awarded only a nominal recovery. The district judge was in the best position to gauge the impact of the evidence in question, whether it would lead to impermissible confusion, and to ensure that the jury did not use it to decide questions outside the scope of the trial. See *United States v. Bonin*, 932 F.3d 523, 541 (7th Cir. 2019). We see no abuse of discretion on this basis.

2

Federal Rule of Civil Procedure 26 governs the pretrial disclosure of expert opinions. For each expert, Rule 26 requires parties to disclose in writing "a complete statement of all opinions the witness will express." Fed. R. Civ. P. 26(a)(2)(B)(i). If a party fails to disclose an opinion as required, that party is not allowed to use the undisclosed opinion at trial unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). We review the district court's admission of evidence under Rule 26 for an abuse of discretion. *Harrington v. Duszak*, 971 F.3d 739, 740–41 (7th Cir. 2020).

Whether a Rule 26(a) violation is harmless is entrusted to the broad discretion of the district court. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Before trial, Boldt disclosed that its expert would testify that Black & Veatch's cost coding (assigning codes to specific costs associated with the project) was unreliable. At trial, Boldt's expert testified about Black & Veatch's cost coding, and used specific examples to underscore her criticisms. Black & Veatch objects that the opinions associated with those specific examples were not disclosed, but we agree with the district court that this testimony was an elaboration on (and so within the scope of) the disclosed opinion. The district court did not permit Boldt's expert to testify to specific overstatements, and the court did not err by allowing the expert to use examples to back up her analysis. See *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010) (holding that an opinion was adequately disclosed when an expert did not clearly deviate from the established scope and the opposing party's cross-examination was well-prepared); *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 64 (1st Cir. 2011) (finding expert testimony to be a "reasonable elaboration" on a disclosed opinion). Black & Veatch also complains that the district court changed course during trial and allowed Boldt's expert to offer an opinion on Black & Veatch's failure to segregate costs for descoped work. Again, we see no error. This opinion was disclosed, and the district court was permitted to revisit its decision as trial developed.

Even if we're wrong, and these opinions shouldn't have been admitted, we do not think they likely mattered to the outcome. The opinions at issue concerned discrete costs, but this trial turned on whether the jury chose to credit Black &

Veatch's experts and their methods. And there was no prejudicial surprise here, because Black & Veatch knew that Boldt's expert would testify on cost coding. See, e.g., *Tribble v. Evangelides*, 670 F.3d 753, 760–61 (7th Cir. 2012). We also don't see any willful attempt to cause prejudice to Black & Veatch simply because Boldt introduced additional exhibits (documents produced by Black & Veatch) based on developments at trial. The district court concluded that any disclosure-related error was harmless. Given the scope of trial, the discrete nature of these opinions, and the deference we owe to the district court's assessment, we agree.

3

The district court instructed the jury that Black & Veatch had "the burden to establish a reasonable basis for computation of damages," that damages "may not be awarded on the basis of conjecture or speculation," and that if Black & Veatch "fails to provide a proper basis for computing its damages, only nominal damages (i.e., $1.00) can be recovered." Black & Veatch argues that this instruction was error because the evidence showed that it suffered actual injury. We review the legal accuracy of jury instructions de novo, and the phrasing for abuse of discretion. *Antrim Pharm. LLC v. Bio-Pharm, LLC*, 950 F.3d 423, 428 (7th Cir. 2020); *United States v. DiSantis*, 565 F.3d 354, 359 (7th Cir. 2009).

Black & Veatch objected to the nominal damages instruction before trial. But at a later hearing, the district court asked if Black & Veatch had any objection to the instruction and Black & Veatch responded, "Not with your proposed instruction, no." Black & Veatch thus waived any objection to this instruction. See *Robinson v. Perales*, 894 F.3d 818, 827 (7th Cir. 2018); *Carter*, 165 F.3d at 1078 (a party that makes its position

clear before the trial court does not need to make a formal objection to the instruction, but that rule only applies if the position was made clear to the trial court and any further objection was unavailing and futile). And even if Black & Veatch had preserved this objection, the district court correctly instructed the jury about Illinois law. See *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 632 (7th Cir. 2007); Illinois Pattern Jury Instructions—Civil 700.15V (2025).

Black & Veatch effectively asks us to create a new rule—a nominal damages instruction is never appropriate when there's evidence from which the jury could calculate damages. We decline that invitation, because under Illinois law, the adequacy of the basis for calculating damages is a question for the finder of fact. See *TAS Distrib.*, 491 F.3d at 632; *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 626 (Ill. 2006).

4

Black & Veatch contends that the district court's errors, taken together, require a new trial. Aggregated errors might alter the course of a trial to violate a party's right to due process. *Taylor v. Kentucky*, 436 U.S. 478, 487 n.15 (1978); *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). Black & Veatch must establish the district court made multiple errors during the trial and that those errors, considered together with the rest of the record, so infected the jury's deliberation that they denied Black & Veatch a fair trial. *Alvarez*, 225 F.3d at 824. We reverse only if the plain and preserved errors, considered together, could not have been harmless. *Sanchez v. City of Chicago*, 880 F.3d 349, 361 (7th Cir. 2018).

We've found no error in the district court's admission and exclusion of evidence and expert opinions, and in the nominal

damages instruction. And we are not persuaded that there is a significant chance that any of the other potential errors Black & Veatch points to (considered together) affected the outcome of the trial. See *Sanchez*, 880 F.3d at 359; Fed. R. Civ. P. 61. The district court could have better organized the proceeding by issuing a final pretrial order, but the rules do not require that step. See Fed. R. Civ. P. 16(d)–(e). Black & Veatch complains that the district court allowed Boldt to admit exhibits mid-trial and to amend its position on pretrial orders and deposition designations. We see no error on this basis, either. The exhibits were produced by Black & Veatch, enforcement of pretrial evidentiary decisions is within the sound discretion of the district court, and the court was allowed to make course changes as the trial developed. See *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 830 (7th Cir. 2020). Finally, although Boldt's attorney made arguments in closing that straddled the line dividing the issues of damages and liability, given the lengthy trial which centered on expert credibility, we are not persuaded that those remarks were "plainly unwarranted and clearly injurious." *Smith v. Hunt*, 707 F.3d 803, 812 (7th Cir. 2013) (citation modified). In sum, we cannot conclude that any errors, considered separately or together, caused such substantial prejudice to Black & Veatch that a new trial is warranted.

## 5

Nor are we convinced that the jury's verdict was contrary to the weight of the evidence. See *Abellan*, 948 F.3d at 831; Fed. R. Civ. P. 59(a). The jury necessarily concluded that Black & Veatch failed to present evidence from which it could calculate the costs of completion to a reasonable degree of certainty. Black & Veatch argued that it incurred costs of $38.9

million to complete work that Boldt had agreed to finish for $15.4 million. Its case rested heavily on the testimony of a project manager and damages expert, and on the cost-coding system which Black & Veatch used to identify costs associated with work originally assigned to Boldt. But the trial exposed numerous cost-coding errors, involving $17.7 million. Similarly, the testimony of Boldt's expert may have led the jury to doubt the reasonableness of Black & Veatch's claimed costs. The jury also lacked insight into how Black & Veatch's damages expert reviewed costs for reasonableness, and evidence showed that Black & Veatch may not have completed the work in the most cost-efficient manner. The parties debate whether certain costs were contested at trial. But the costs of particular items or parts of the project weren't what the jury was asked to decide. On this record, it was not against the manifest weight of the evidence for the jury to conclude that Black & Veatch failed to provide a proper basis for computing its damages.

6

Black & Veatch's final argument on appeal concerns the district court's decision on Boldt's post-trial motion. Boldt moved under Rule 59(e) to amend the judgment, seeking to recover payment for work it performed prior to termination. Specifically, Boldt asserted that even if it had been terminated for cause, the subcontract required Black & Veatch to pay Boldt for completed work. The district court denied the motion, explaining that "Boldt seeks relief properly pursued in a new case, which Boldt has since filed." The court reasoned that "the relief Boldt seeks arises from a separate and distinct breach of the Subcontract from that alleged in this case." Black & Veatch contends that this portion of the district court's rul-

ing is an advisory opinion, and that Boldt's claim is barred by res judicata.

The district court's ruling wasn't advisory. It had concrete consequences for the parties—stopping Boldt from pursuing a claim in this suit based on costs for pre-termination work. See *Hill v. Madison County*, 983 F.3d 904, 906 (7th Cir. 2020). Perhaps res judicata should prevent Boldt from litigating its claim in a new case, see 18 Wright & Miller's Federal Practice & Procedure § 4413 (3d ed. 2026), but we need not decide now. Even if the district court erred in noting that Boldt's claim was properly brought in another lawsuit, any error was harmless. See *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 857 (8th Cir. 2008) (gathering cases); *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) ("[L]aw of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of *the same litigation*. Res judicata does not speak to direct attacks in the same case, but rather has application *in subsequent actions*.") (emphasis added). Because Black & Veatch has not shown that it is entitled to a new trial or that the court's ruling on Boldt's motion resulted in prejudice, we affirm the denial of the post-trial motions.

### B

We turn next to Boldt's cross-appeal. We review decisions on cross-motions for summary judgment de novo. *Cent. States, Se. and Sw. Areas Pension Fund v. Univar Sols. USA Inc.*, 148 F.4th 426, 429 (7th Cir. 2025). Because the district court granted summary judgment to Black & Veatch, we construe all facts and draw all inferences in Boldt's favor. See *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 465 (7th Cir. 2018). While the parties appear (at times) to have been under the impres-

sion that Boldt alleged a single claim for breach of contract, Boldt actually asserted that Black & Veatch breached the agreement in three ways: (1) failing to pay Boldt on time for work completed; (2) failing to take certain steps during the project, such as providing adequate construction works or extending the project schedule based on delays; and (3) wrongfully terminating the subcontract. These involve different "operative facts that produce an assertable right in court and create an entitlement to a remedy," which make them separate claims, not theories of relief (also known as causes of action, the legal vehicles for pursing a claim). *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023); see also *Hi-Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1406–11 (7th Cir. 1993). We consider each claim in turn.

1

Black & Veatch moved for summary judgment on count 1 of the complaint (which included all three of the claims above) but didn't specifically explain why it was entitled to judgment on Boldt's claim for costs of completed work. (Note that this claim was premised on the theory that Boldt had not been terminated for cause. By contrast, the claim that Boldt asserted after trial—discussed above at 14–15, and currently at issue in a separate suit—relies on a different part of the contract, which required payment for completed work if Boldt was terminated for cause.) In its response brief, Boldt asserted in passing that its claim for costs should survive summary judgment. Without addressing that point, the district court granted summary judgment to Black & Veatch and held that Boldt "cannot maintain any portion of its breach of contract claim." Boldt moved for reconsideration but did not assert that it still had a claim based on its costs for work completed.

Five months later, though, during the pre-trial conference, Boldt argued that this claim was still alive and well (citing different provisions of the subcontract that weren't referenced in the complaint), and that it should be allowed to pursue it at trial. The district court barred Boldt from presenting evidence in support of this claim for breach, noting that it had granted summary judgment as to all the alleged breaches.

On appeal, Boldt fails to grasp the essential point—the district court granted summary judgment on this claim. Boldt contends that the district court erred by preventing Boldt from arguing to the jury that it was entitled to these costs and correctly observes that it included related allegations in its complaint. But Boldt fails to make any argument that the district court *erred by granting summary judgment* on this claim. Summary judgment may have been inappropriate here, given that Black & Veatch never explained why it was entitled to summary judgment on this claim. But because "[i]t is not this court's responsibility to research and construct the parties' arguments," Boldt waived argument that the district court erroneously granted summary judgment on its claim for unpaid costs. *United States v. Beechler*, 68 F.4th 358, 370 (7th Cir. 2023) (citation modified).

2

Boldt's second breach of contract claim centers on Black & Veatch's alleged failure to perform. For instance, the complaint says that Black & Veatch failed to provide and maintain crane pads and access roads, didn't properly remediate soft soils, and refused to extend the schedule and compensate Boldt for delays caused by others. The district court held that Black & Veatch was entitled to summary judgment because the subcontract said that Boldt would have no claim arising

out of the state or availability of Black & Veatch's construction works.

On appeal, Boldt makes no argument that the district court erred in granting summary judgment as to this claim. In asking us to upend the district court's judgment, Boldt has the obligation to explain why we should reverse, and to cite appropriate authority in support. See *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022). Boldt didn't do that with respect to its claim based on Black & Veatch's failure to perform, and so we affirm the district court's grant of summary judgment as to this claim.

3

The district court also granted summary judgment on the claim that Black & Veatch wrongfully terminated the agreement. This was error. The court understood the subcontract to effectively set up a default rule—Boldt was responsible for delays unless it adequately notified Black & Veatch that a delay was caused by Black & Veatch or GE. We disagree, because this ambiguous contract doesn't necessarily establish such a lopsided rule. Applying its default-rule interpretation, the district court held that Boldt didn't adequately notify Black & Veatch of delays. Again, we reach the opposite conclusion. A jury could find that Boldt put Black & Veatch on notice of delays caused by others such that it could not be held responsible. The bottom line is that there's a material dispute about whether Boldt was wrongfully terminated. A jury must decide both whether the parties intended to assign blame to Boldt for delays absent effective notice and whether Boldt in fact provided adequate notice.

i

This case is governed by Illinois law. We construe the contract to give effect to the intent of the parties, looking initially to the language of the agreement alone. *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). If the contract is unambiguous, we will enforce it as written. *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). But a contract is ambiguous if it is "reasonably susceptible to more than one meaning," *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (citation modified), at which point construction generally becomes a question of fact for the jury, *Harmon v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013). To understand why reversal is required, four parts of the subcontract are relevant: (1) the for-cause termination provision (§ 552.23.1); (2) a provision that said staying on schedule was a material requirement (§ 552.5.1); (3) provisions barring Boldt from making claims based on Black & Veatch-provided construction works (§§ 554.11.1 & 554.11.3); and (4) clauses describing how Boldt could notify Black & Veatch of delays caused by Black & Veatch or GE (§§ 552.34 & 552.35).

The first of these is straightforward: the subcontract's for-cause termination provision said that if Black & Veatch notified Boldt that it was in default in any obligation, Boldt had seven days to solve the problem or, if the default could not be cured in that amount of time, Boldt had to begin action and diligently pursue the cure to completion. If Boldt didn't satisfy those requirements, Black & Veatch was permitted to terminate all or part of the subcontract.

Second, consider the requirement that construction stay on schedule:

> Performance of the Work as scheduled in the
> Construction Schedule … is a material provi-
> sion of the Subcontract. [Boldt] shall furnish
> monthly progress reports of the Work as re-
> quested by [Black & Veatch] …. If the work is
> not progressing as scheduled, [Boldt] shall im-
> plement appropriate corrective measures to get
> the Work back on schedule and advise [Black &
> Veatch] of such corrective actions. [Boldt] will
> be solely responsible for costs incurred to imple-
> ment the corrective measures.

Third, the subcontract includes what we refer to as the ex-
culpatory clauses. Black & Veatch promised to provide cer-
tain construction works, including primary access roads and
crane pads. Boldt agreed that if it used Black & Veatch's con-
struction works, it would accept them as is and waive any
claims arising out of or relating to their use. Similarly, the sub-
contract said that Black & Veatch did not "guarantee uninter-
rupted use of [Black & Veatch]-furnished Construction Works
and [Boldt] has no Claim against [Black & Veatch] for incon-
venience suffered due to interruption in availability."

The fourth and final section of the subcontract relevant
here addresses the possibility that Black & Veatch or GE
would cause a delay. If Boldt believed that Black & Veatch or
GE caused the schedule to slip, Boldt was to give Black & Ve-
atch timely notice including a description of the details of the
delay and "any effects on [Boldt's] performance of its obliga-
tions." If Boldt gave the required notice and complied with
other conditions, it would not be responsible for a breach of
the agreement based on delays caused by Black & Veatch or
GE.

ii

This subcontract is not a model of clear drafting. The district court put these pieces together and concluded that the agreement set up a default rule: Boldt was responsible for delays unless it followed the procedures for notifying Black & Veatch that GE or Black & Veatch were causing a slowdown. On appeal, Black & Veatch endorses that interpretation, and we think that's a fair reading of the subcontract. The agreement said that staying on schedule was a material requirement (in the context of an agreement where Boldt was doing the work) and laid out a detailed notice mechanism for Boldt to follow if Black & Veatch or GE caused a problem. It's reasonable to infer that Boldt's only mechanism for avoiding default because of delays was to show (via the notice provisions) that it wasn't at fault.

But we disagree that this is the only reasonable interpretation. While the subcontract said staying on schedule was a material requirement, that doesn't necessarily mean that Boldt was responsible for every delay. Similarly, the parties might have understood the notice procedures to be Boldt's only way to avoid default based on the schedule slipping, but that part of the subcontract doesn't say that Boldt is automatically to blame for a delay absent effective notice. And while the exculpatory clauses bar Boldt from bringing claims about Black & Veatch's construction works, we don't believe those clauses must be read to lock Boldt into the notice mechanism as the only remedy for delays caused by others.

In short, the subcontract is ambiguous about whether Boldt was responsible for delays unless it followed the notice procedures. The agreement can be reasonably read to set up that rule, but the parties may also have intended that Boldt

was not responsible for delays unless they were actually Boldt's fault. A jury must decide what the parties intended. See *Harmon*, 712 F.3d at 1050.

iii

Because it's possible that Boldt could only be found in default based on delays for which it was responsible, Black & Veatch was not entitled to summary judgment on Boldt's breach of contract claim for wrongful termination. Summary judgment was also inappropriate because there's a material dispute about whether Boldt adequately notified Black & Veatch of delays caused by others.

While Boldt argued that it adequately notified Black & Veatch of delays, the district court disagreed. The court faulted Boldt's memos and letters for being insufficiently detailed and found that even if Boldt had notified Black & Veatch of delays, it would still be unable to escape liability because it hadn't secured an extension on the timeline. We disagree on both points. While Boldt communicated frequently with Black & Veatch about the delays, to decide this appeal we need only focus on the letters which Boldt sent on August 15 and September 5.

On August 15, Boldt wrote that "we are experiencing soil conditions that are preventing Boldt from performing the Work." Boldt cited the relevant notice provision in the subcontract, included photographs and a video of the site conditions and explained that Boldt was "currently incurring additional costs and experiencing schedule delays as a direct result of this Black & Veatch deficiency." Boldt also noted that, because it was unsure how quickly Black & Veatch would

solve the problem, "the full impacts of this deficiency cannot be quantified."

On September 5, in response to Black & Veatch's notice that Boldt was in default, Boldt wrote another letter. Boldt agreed that the project had fallen behind schedule but wrote that it was not in default because Black & Veatch and GE had caused delays. Specifically, Boldt wrote that unsuitable soil conditions and inconsistent and reduced deliveries by GE were to blame. Boldt also attached charts comparing the original GE deliveries with the actual or revised delivery schedule and showing the expected or actual impact on the project's major milestones.

A reasonable jury could conclude that these letters satisfied the subcontract's notice requirements, such that Boldt could not be held "responsible or liable for or deemed in breach of the Subcontract because of any failure or delay in completing the Work in accordance with the schedule." The letters included details about the delays and their effects on Boldt's performance, and a jury could find that they were timely sent, involved delays that qualified as "Owner and/or Purchaser-Caused Delay" and "Turbine Vendor-Caused Delay," and that nothing more was required.

Black & Veatch's arguments to the contrary are unconvincing. Like the district court, Black & Veatch faults Boldt's notices for being vague and general, yet the subcontract said only that Boldt had to describe the details of the delay and effects on the schedule, and Boldt wasn't required to identify effects on the construction's overall trajectory. And while the September 5 letter was a response to Black & Veatch's notice of default (and wasn't clearly labeled a notification of a delay), that doesn't matter. Nothing in the agreement said Boldt had

to label its notices using specific terms or that notice could not be sent in response to another letter. Alternatively, Black & Veatch contends that the exculpatory clauses mean that Boldt cannot pursue its wrongful termination claim. We find that interpretation unreasonable. The parties agreed that Boldt could not pursue claims against Black & Veatch based on the availability or state of the construction works. But the exculpatory clauses do not bar Boldt from asserting that it was wrongfully terminated because Black & Veatch caused delays for which Boldt was improperly blamed, especially after Boldt adequately notified Black & Veatch of those problems. See *XCO Int'l Inc. v. Pac. Sci. Co.*, 369 F.3d 998, 1005 (7th Cir. 2004) (applying Illinois law and noting that "[c]ontract interpretations that produce commercially unreasonable results are disfavored, not as a matter of policy but simply because they are implausible to impute to the parties"); *Rubin v. Laser*, 703 N.E.2d 453, 459 (Ill. App. Ct. 1998) ("Courts construe contracts so as to avoid absurd results.").

The district court grounded its ruling on two other points. It held that (1) beyond notice, Boldt also had to secure an extension of the schedule to avoid liability, and (2) Boldt was at least partly responsible for being behind schedule, such that the notices were beside the point. We're not persuaded. The subcontract didn't require Boldt to both notify Black & Veatch of delays and seek an extension—it said that if Black & Veatch provided adequate notice, it was entitled to a schedule revision. And while it's undisputed Boldt failed to keep pace on certain critical tasks, that doesn't automatically doom its wrongful termination claim. Because Black & Veatch may have terminated Boldt for delays caused by others, and despite receiving adequate notice of those delays, a jury could conclude that Black & Veatch lacked cause to cut Boldt out.

To sum up, Black & Veatch was not entitled to summary judgment on the wrongful termination claim. The subcontract is ambiguous about (and so a jury must decide) whether Boldt was necessarily at fault unless it notified Black & Veatch of a delay caused by others. And there's a material dispute of fact about whether Boldt adequately notified Black & Veatch of the schedule slipping because of problems with the construction site and turbine deliveries. For both reasons, we reverse the grant of summary judgment as to this claim.

C

We close with a word about what remains to be done in the district court. Because we've reversed summary judgment as to Boldt's breach of contract claim for wrongful termination, the parties must litigate whether Boldt was terminated for cause, and (relatedly) whether Boldt or Black & Veatch breached the agreement. If Boldt ultimately prevails on those questions, it must then prove its damages.

If Black & Veatch succeeds on liability, however, the parties dispute whether Black & Veatch would be entitled to a second jury determination on damages. As discussed above, Black & Veatch has received one fair trial on this issue. And the Seventh Amendment does not "require that an issue once correctly determined … be tried a second time, even though justice demands that another distinct issue, because erroneously determined, must again be passed on by a jury." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 498 (1931); see U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.").

Whether Black & Veatch deserves a second bite at the damages apple depends on if that question "is so distinct and separable" from the issue of liability that a trial on liability alone "may be had without injustice." *Gasoline Prods.*, 283 U.S. at 500.

Proving liability for breach of contract in Illinois requires, among other things, evidence of substantial performance by the plaintiff and of a breach. See *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Proof of damages requires Black & Veatch to show the costs imposed by Boldt's failure to perform. See *Wells v. Minor*, 578 N.E.2d 1337, 1343–44 (Ill. App. Ct. 1991); *O'Connor Const. Co. v. Belmont Harbor Home Dev., LLC*, 909 N.E.2d 294, 298–99 (Ill. App. Ct. 2009). It's true, as Black & Veatch argues and as we've discussed above, that in this case there is factual overlap between the evidence relevant to damages and liability (for instance, any jury deciding liability or damages will need to know the subcontract terms and date of breach). But overlap in relevant evidence does not mean that two questions are inseparable. What matters is whether a second jury will decide liability without making factual findings that were already decided a first time by another jury. *Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1130 (11th Cir. 2020); see *Gasoline Prods.*, 283 U.S. at 499–500; *McClain v. Owens-Corning Fiberglas Corp.*, 139 F.3d 1124, 1128 (7th Cir. 1998). The first jury was neither asked nor permitted to decide whether Boldt was liable to Black & Veatch. Instead, the jury had to take as given that Black & Veatch permissibly terminated Boldt for cause and decide only the costs reasonably incurred by Black & Veatch to complete Boldt's scope of work, minus the subcontract price. A second jury in this case, then, will make new and different factual findings than were at issue in the first trial. And the questions

of liability and damages are separated not only by elements but also by timing: the liability inquiry focused on Boldt's and Black & Veatch's conduct prior to termination; the damages question centers on Black & Veatch's conduct post-termination. See *McClain*, 139 F.3d at 1128. These issues are separable, so the damages verdict stands.

Black & Veatch argues that it may have other damages beyond the cost of completion that it should be allowed to pursue in a new trial. Perhaps, but we need not decide now (we leave that to the district court). This much is clear—if Black & Veatch succeeds in proving that Boldt breached the subcontract, a jury has already set the measure of its cost of completion damages.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED